**Law Offices of Ronaldo C. George, LLC**
**485 Georges Road, Suite 112**
**Dayton, NJ 08810**
**(732) 579-4300**
**Ronaldo C. George, Esq. RG-0430**
**Attorney for Debtor**

---

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

In re:

    DARYL S. MARTIN            CASE NO.:   18-34619-KCF

                                       CHAPTER:   13

              Debtor(s)

---

## DEBTOR'S OBJECTION TO BANK OF AMERICA PROOF OF CLAIM FOR 73 DEANS LANE, MONMOUTH JUNCTION, NJ

To:

Albert Russo
Standing Chapter 13 Trustee
CN 4853
Trenton,  NJ  08650

Bank of America Home Loans
P.O. Box 26078
Greensboro, NC 27420

Frenkel, Lambert, Weiss, Weisman &
Gordon, LLP
80 Main Street, Suite 460
West Orange, New Jersey 07052

Daryl S. Martin
7 Sarah Court
Monmouth Junction, NJ 08852

I, Ronaldo C. George, Esq., make this Certification in support of my objection to the proof of claim filed by Bank of America Home Loans for Debtor's property located at 73 Deans Lane, Monmouth Junction, New Jersey. I certify that I am fully familiar with the facts of this case.

1.      Debtor's Chapter 13 Petition was filed on December 17, 2018 under Case Number 18-34619-KCF.

2.      Creditor Bank of America filed a Mortgage Proof of Claim, Equity Maximizer Agreement and Disclosure Statement, and Copy of Mortgage on February 13, 2019. (See Exhibit A)

3.      Paragraph 4 of the Equity Maximizer Agreement and Disclosure Statement clearly states "This Agreement covers a revolving line of credit for the principal amount of $250,000.00.

4.      As this was an equity line of credit, debtor maintains that he did not utilize the entire $250,000.00 that was available under the Home Equity Line Agreement.

5.      Debtor used checks supplied by secure creditor to draw from this Home Equity Line of Credit Agreement however debtor disputes that the principal amount utilized was $249,000.00.

6.      Copies of home equity line of credit checks used by Debtor were destroyed in a fire at his residence in January of 2018. Thus, while Debtor admits he used the home equity line of credit, proof of actual amounts owed that were in his possession are not available.

7.      Debtor Objects to Secured Creditor Bank of America's Proof of Claim to the extent that secured creditor has not provided proof by way of copies of cancelled home equity line of credit checks that debtor utilized $249,000.00 of the $250,000.00 credit line.

8.    Debtor request that secured creditor provide proof of cancelled checks written against home equity line of credit which proves debtor utilized almost the full home equity line of credit in the amount of $249,000.00.

9.    Should secured creditor Bank of America provide proof that debtor utilized the home equity line of credit in the amount of $249,000.00 then debtor shall withdraw his objection to this proof of claim.

10.    Should secured creditor Bank of America be unable to provide proof that debtor utilized the full home equity line of credit in the amount of $249,000.00 then debtor respectfully requests that the Proof of Claim filed by Bank of America on February 13, 2019 be amended to provide an accurate amount of debtor's indebtedness and the Chapter 13 Plan be modified to reflect accurate amounts owed under the amended proof of claim.


Dated:  May 21, 2019                          */s/ Ronaldo C. George*
                                              Ronaldo C. George, Esq.
                                              Attorney for Debtors

**Law Offices of Ronaldo C. George, LLC**
**485 Georges Road, Suite 112**
**Dayton, NJ 08810**
**(732) 579-4300**
**Ronaldo C. George, Esq. RG-0430**
**Attorney for Debtor**

---

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

In re:

     DARYL S. MARTIN           CASE NO.:   18-34619-KCF

                                     CHAPTER:   13

            Debtor(s)

---

**CERTIFICATION OF SERVICE**

1.     I, Ronaldo C. George, Esquire, represent the Debtor Daryl Martin in the above

captioned matter.

2.     On May 21, 2019, I sent a copy of the following pleadings and/or documents to

the parties listed in the chart below:

         (x) DEBTOR'S OBJECTION TO BANK OF AMERICA PROOF OF
         CLAIM FOR 73 DEANS LANE, MONMOUTH JUNCTION, NJ

3.     I hereby certify under penalty of perjury that the above documents were sent

using the mode of service indicated.

Dated: May 21, 2019                  ***/s/ Ronaldo C. George***
                                      Ronaldo C. George, Esq.
                                      Attorney for Debtors

**SERVICE LIST**

| Name and Address of Party Served | Relationship of Party to Case | Mode of Service |
|---|---|---|
| Albert Russo<br>Standing Chapter 13 Trustee<br>CN 4853<br>Trenton, NJ  08650 | Trustee | Notice of Electronic Filing (NEF) and First Class Mail |
| Frenkel, Lambert, Weiss, Weisman & Gordon, LLP<br>80 Main Street, Suite 460<br>**West Orange**, New Jersey **07052** | Creditor Attorney | Notice of Electronic Filing (NEF) and First-Class Mail |
| Daryl S. Martin<br>7 Sarah Court<br>Monmouth Junction, New Jersey 08852 | Debtor | Regular Mail |
| Bank of America Home Loans<br>P.O. Box 26078<br>Greensboro, NC 27420 | SECURED CREDITOR | First Class Mail and Certified Mail, RRR |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

EXHIBIT A

Desc Main Document — Page 1 of 22

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | DARYL S MARTIN |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | ALL District of NEW JERSEY (State) |
| Case number | 18-34619 |

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | BANK OF AMERICA, N.A.<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? _____ |

| | | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|---|
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Bank of America<br>Name<br><br>PO BOX 31785<br>Number        Street<br><br>Tampa          FL          33631-3785<br>City          State          ZIP Code<br><br>Contact phone   1-800-669-6607<br><br>Contact email | Bank of America, N.A.<br>Name<br><br>P.O. BOX 660933<br>Number        Street<br><br>Dallas          TX          75266-0933<br>City          State          ZIP Code<br><br>Contact phone   1-800-669-6607<br><br>Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____<br>                                                                                        MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

---

| 6. | **Do you have any number you use to identify the debtor?** | ☐ No |
|---|---|---|

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  9  0  6  8

---

| 7. | **How much is the claim?** | $ 291802.44 |
|---|---|---|

. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Recorded Mortgage

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:  73 DEANS LANE MONMOUTH JCT, NJ 08852

**Basis for perfection:**  Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ 291802.44

**Amount of the claim that is unsecured:**  $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ 82942.87

**Annual Interest Rate** (when case was filed) 4.24 %

☐ Fixed

☑ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| Official Form 410 | **Proof of Claim** | page 2 |
|---|---|---|

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | Amount entitled to priority |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it.** FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  02/12/2019
                  MM  /  DD  /  YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Tabitha Brown- Jacobs | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Assistant Vice President | | |
| Company | Bank of America, N.A. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4200 Amon Carter Blvd | | |
| | Number        Street | | |
| | Fort Worth, TX 76155 | | |
| | City | State | ZIP Code |
| Contact phone | 1-800-669-6607 | Email | Tabitha.Brown@BankofAmerica.com |

# Mortgage Proof of Claim Attachment

**(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 18-34619 | Principal balance: | 249000.00 | Principal & interest due: | 82942.87 | Principal & interest: | 2251.08 |
| Debtor 1: | DARYL S MARTIN | Interest due: | 42802.44 | Prepetition fees due: | 0.00 | Monthly escrow: | 0.00 |
| Debtor 2: | | Fees, costs due: | 0.00 | Escrow deficiency for funds advanced: | 0.00 | Private mortgage insurance: | 0.00 |
| Last 4 digits to identify: | 9 0 6 8 | Escrow deficiency for funds advanced: | 0.00 | Projected escrow shortage: | 0.00 | Total monthly payment: | 2251.08 |
| Creditor: | BANK OF AMERICA, N.A. | Less total funds on hand: | − 0.00 | Less funds on hand: | − 0.00 | | |
| Servicer: | BANK OF AMERICA N.A. | Total debt: | 291802.44 | Total prepetition arrearage: | 82942.87 | | |
| Fixed accrual/daily simple interest/other: | Other | | | | | | |

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 08/08/2012 | 472.42 | | | Monthly Assessment | | 472.42 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 09/08/2012 | 472.42 | | | Monthly Assessment | | 944.84 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/08/2012 | 457.18 | | | Monthly Assessment | | 1402.02 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/08/2012 | 472.42 | | | Monthly Assessment | | 1874.44 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 12/08/2012 | 457.18 | | | Monthly Assessment | | 2331.62 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 01/08/2013 | 472.42 | | | Monthly Assessment | | 2804.04 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 02/08/2013 | 473.01 | | | Monthly Assessment | | 3277.05 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 03/08/2013 | 427.87 | | | Monthly Assessment | | 3704.92 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 04/08/2013 | 473.71 | | | Monthly Assessment | | 4178.63 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 05/08/2013 | 458.43 | | | Monthly Assessment | | 4637.06 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 06/08/2013 | 473.72 | | | Monthly Assessment | | 5110.78 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 07/08/2013 | 458.43 | | | Monthly Assessment | | 5569.21 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 08/08/2013 | 473.72 | | | Monthly Assessment | | 6042.93 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 09/08/2013 | 473.71 | | | Monthly Assessment | | 6516.64 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/08/2013 | 458.43 | | | Monthly Assessment | | 6975.07 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/08/2013 | 473.72 | | | Monthly Assessment | | 7448.79 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |

**Mortgage Proof of Claim Attachment: Additional Page** (12/15)

Case number: 18-34619

Debtor 1: DARYL S MARTIN

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/08/2013 | 458.43 | | | Monthly Assessment | | 7907.22 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 01/08/2014 | 473.71 | | | Monthly Assessment | | 8380.93 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 02/08/2014 | 473.72 | | | Monthly Assessment | | 8854.65 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 03/08/2014 | 427.87 | | | Monthly Assessment | | 9282.52 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 04/08/2014 | 473.71 | | | Monthly Assessment | | 9756.23 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 05/08/2014 | 458.43 | | | Monthly Assessment | | 10214.66 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 06/08/2014 | 473.72 | | | Monthly Assessment | | 10688.38 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 07/08/2014 | 458.43 | | | Monthly Assessment | | 11146.81 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 08/08/2014 | 473.72 | | | Monthly Assessment | | 11620.53 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 09/08/2014 | 473.71 | | | Monthly Assessment | | 12094.24 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/01/2014 | | | | Adjustment | 10/08/2014 | 0 | 0 | 12094.24 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/08/2014 | 458.43 | | | Monthly Assessment | | 458.43 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/08/2014 | 473.72 | | | Monthly Assessment | | 932.15 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 12/08/2014 | 458.43 | | | Monthly Assessment | | 1390.58 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 01/08/2015 | 473.71 | | | Monthly Assessment | | 1864.29 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 02/08/2015 | 473.72 | | | Monthly Assessment | | 2338.01 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 03/08/2015 | 427.87 | | | Monthly Assessment | | 2765.88 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 04/08/2015 | 473.71 | | | Monthly Assessment | | 3239.59 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 05/08/2015 | 458.43 | | | Monthly Assessment | | 3698.02 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 06/08/2015 | 473.72 | | | Monthly Assessment | | 4171.74 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 07/08/2015 | 458.43 | | | Monthly Assessment | | 4630.17 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 08/08/2015 | 473.72 | | | Monthly Assessment | | 5103.89 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |

**Mortgage Proof of Claim Attachment: Additional Page** (12/15)

Case number: 18-34619

Debtor 1: DARYL S MARTIN

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| 09/08/2015 | 473.71 | | | Monthly Assessment | | 5577.6 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/08/2015 | 458.43 | | | Monthly Assessment | | 6036.03 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/08/2015 | 473.72 | | | Monthly Assessment | | 6509.75 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 12/08/2015 | 458.43 | | | Monthly Assessment | | 6968.18 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 01/08/2016 | 473.71 | | | Monthly Assessment | | 7441.89 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 02/08/2016 | 473.13 | | | Monthly Assessment | | 7915.02 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 03/08/2016 | 491.27 | | | Monthly Assessment | | 8406.29 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 04/08/2016 | 12619.38 | | | Monthly Assessment | | 21025.67 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 05/08/2016 | 508.21 | | | Monthly Assessment | | 21533.88 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 06/08/2016 | 1908.47 | | | Monthly Assessment | | 23442.35 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 07/08/2016 | 1891.54 | | | Monthly Assessment | | 25333.89 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 08/08/2016 | 1908.47 | | | Monthly Assessment | | 27242.36 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 09/08/2016 | 1908.48 | | | Monthly Assessment | | 29150.84 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/08/2016 | 1891.53 | | | Monthly Assessment | | 31042.37 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/30/2016 | 474.32 | | | Monthly Assessment | | 31516.69 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/25/2016 | 1722.13 | | | Monthly Assessment | | 33238.82 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 12/25/2016 | 1891.53 | | | Monthly Assessment | | 35130.35 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 01/25/2017 | 1908.48 | | | Monthly Assessment | | 37038.83 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 02/25/2017 | 1962.78 | | | Monthly Assessment | | 39001.61 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 03/25/2017 | 1906.71 | | | Monthly Assessment | | 40908.32 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 04/25/2017 | 1962.78 | | | Monthly Assessment | | 42871.1 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 05/25/2017 | 1995.26 | | | Monthly Assessment | | 44866.36 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |

**Mortgage Proof of Claim Attachment: Additional Page** (12/15)

Case number: 18-34619

Debtor 1: DARYL S MARTIN

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 06/25/2017 | 2015.65 | | | Monthly Assessment | | 46882.07 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 07/25/2017 | 1995.26 | | | Monthly Assessment | | 48877.27 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 08/25/2017 | 2068.52 | | | Monthly Assessment | | 50945.79 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 09/25/2017 | 2068.52 | | | Monthly Assessment | | 53014.31 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/25/2017 | 2046.42 | | | Monthly Assessment | | 55060.73 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/25/2017 | 2068.52 | | | Monthly Assessment | | 57129.25 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 12/25/2017 | 2046.42 | | | Monthly Assessment | | 59175.67 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 01/25/2018 | 2068.52 | | | Monthly Assessment | | 61244.19 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 02/25/2018 | 2121.39 | | | Monthly Assessment | | 63365.58 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 03/25/2018 | 2049.97 | | | Monthly Assessment | | 65415.55 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 04/25/2018 | 2121.39 | | | Monthly Assessment | | 67536.94 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 05/25/2018 | 2148.75 | | | Monthly Assessment | | 69685.69 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 06/25/2018 | 2174.26 | | | Monthly Assessment | | 71859.95 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 07/25/2018 | 2148.75 | | | Monthly Assessment | | 74008.7 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 08/25/2018 | 2227.13 | | | Monthly Assessment | | 76235.83 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 09/25/2018 | 2227.13 | | | Monthly Assessment | | 78462.96 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 10/25/2018 | 2199.91 | | | Monthly Assessment | | 80662.87 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |
| 11/25/2018 | 2280 | | | Monthly Assessment | | 82942.87 | 0 | 0 | 0 | 0 | 0 | 249000 | 0 | 0.00 | 0 | 0 |

# BANK OF AMERICA EQUITY MAXIMIZER AGREEMENT
# AND DISCLOSURE STATEMENT

Property Serving as Security (the "Property"): 73 DEANS LANE, MONMOUTH JCT, MIDDLESEX, NEW JERSEY 08852

Borrower's Name and Address: DARYL MARTIN, 73 DEANS LANE, MONMOUTH JUNCTION, NEW JERSEY 08852

Lender's Name and Address: Bank of America, NA, National Banking Association, 100 North Tryon Street, Charlotte, North Carolina 28255

Date:MAY 4, 2006                     Annual Percentage Rate: 6.7400          Draw Period: 120 Mos.
Loan Number:                         Margin: -1.0100                         Repayment Period: 180 Mos.
Maturity Date: MAY 4, 2031           Max. Interest Rate: 24.0000             Billing Cycle: MONTHLY
Credit Limit: $ 250,000.00

1.  **Introduction.** This Bank of America Equity Maximizer Agreement and Disclosure Statement ("Agreement") governs your Home Equity Line of Credit Account (your "Credit Line" or "Account") with the lender named above ("Lender"). Your Account is a revolving credit arrangement in which we make loans to you by advancing funds ("Advances") at your direction, allowing you to repay those Advances and take additional Advances, subject to the terms of this Agreement. This Agreement will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount equal to or less than zero.

In this Agreement, the terms "we," "us," "our" and "Bank" refer to the Lender or to any subsequent assignee or transferee. Except as noted below, the terms "you," "your," "yours" and "Borrower" refer to each person that signs this Agreement or has authority to use the Credit Line. Read this Agreement carefully so that you know how your Account works and keep a copy of this Agreement for your records.

2.  **Borrower's Promise to Pay.** You promise to pay to Lender the total of all Advances plus FINANCE CHARGES, together with all fees and charges under the terms of this Agreement. You will pay your Account according to the terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

3.  **Term.** The term of your Account will begin as of the date of this Agreement (the "Opening Date") and will continue until all indebtedness under this Agreement, if not already paid pursuant to the payment provision below, will be due and payable upon maturity. The Draw Period of your Account will begin on the date after the Opening Date, when this Agreement is accepted by us in the State of North Carolina, following the perfection of the Security Instrument and the meeting of all of our other conditions and will continue for one hundred and twenty (120) months. You may obtain credit advances during the Draw Period. After the Draw Period ends, the Repayment Period will begin, and you will no longer be able to obtain credit advances. The length of the Repayment Period is one hundred and eighty (180) months depending on the repayment schedule set forth below. You agree that we may renew or extend the period during which you may obtain credit advances or make payments.

4.  **Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of    TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS                    ($        250,000,)which will be your Credit Limit under this Agreement.

You may not request an Advance from your Account that would cause your outstanding balance of Advances to exceed your Credit Limit nor are we obligated to pay any Advance request that would cause your outstanding balance of Advances to exceed your Credit Limit. If we do make an Advance that causes your outstanding balance of Advances to exceed your Credit Limit, this will not constitute an increase in your Credit Limit. You agree to immediately repay the amount by which your outstanding balance of Advances exceeds your Credit Limit.

5.  **Security.** All amounts due under the Account are secured by a mortgage, deed of trust, or security deed ("Security Instrument") on the Property identified on page one of this Agreement. Borrower agrees to pay all amounts due, and perform all covenants and obligations required of Borrower under the Security Instrument. If it becomes necessary for us to advance funds to you above the Credit Limit to protect our security interest, those amounts in excess of the Credit Limit will be owed by you and will be secured by the Security Instrument unless Applicable Law prohibits the same. The Security Instrument and this Agreement are related documents and a default under either document will be treated as a default under both documents. To the extent permitted by Applicable Law, the lien of the Security Instrument will continue and will have the same priority if, with your consent, we renew, extend, amend, modify or substitute this Agreement. In such event, you agree to execute any additional documents necessary to achieve the action being taken.

6.  **Terms And Definitions.** The following terms are defined as set forth in this Section. Other terms are defined elsewhere in this Agreement.

A.  "Billing Cycle" is an interval of time that occurs regularly during the term of this Agreement and is used to determine the FINANCE CHARGES and other fees, charges, and credit insurance premiums that are due on your Account. The number of days in each Billing Cycle may vary from time to time. A Billing Cycle occurs regardless of whether there is a balance or any activity on your Account. Your Billing Cycle is stated on page 1 of this Agreement.

B.  "Billing Statement" is a statement that we will furnish to you periodically that provides important information regarding your Account activity.

C.  "Credit Limit" is the maximum aggregate amount of principal that we will extend to you under this Agreement. Your Credit Limit may change under certain circumstances. Your Credit Limit is stated on page 1.

D.  "Draw Period" is the period of time during which you may request Advances from your Account. The Draw Period is stated on page 1.

E.  "Maturity Date" is the date on which the entire Account Balance under this Agreement is due. The Maturity Date of your Account is stated on page 1.

F.  "Minimum Payment" is the minimum amount you must pay on your Credit Account, as reflected on each periodic Billing Statement for each Billing Cycle. Your Minimum Payment during the Draw Period and during the Repayment Period will be calculated as described below under the heading "Payments."

G. **"Outstanding Balance"** is the new balance of the Account, which includes, if applicable, principal, accrued interest on the outstanding principal, fees and charges, Property Expenses and any voluntary insurance, Borrowers' Protection Plan, or Line Protection™ Plan.

H. **"Property Expenses"** are expenses we incur because you do not fulfill all obligations of the Security Instrument for the Property that secures this Account.

I. **"Repayment Period"** is the period of time that begins at the end of the Draw Period. During the Repayment Period, you may no longer request Advances from your Account.

J. **"Variable Rate Balance"** is the balance during the Draw Period that equals the Outstanding Balance that is not part of a Fixed Rate Loan Option.

K. **"Variable Rate Principal Balance"** is the principal balance that is not payable under a Fixed Rate Loan Option.

7. **Payments.**

A. **During the Draw Period.** During the Draw Period, the Total Minimum Payment Due is equal to the sum of: (1) the Variable Rate Balance Minimum Payment (described below); (2) the payment due, if any, for any outstanding Fixed Rate Loan Option; and any past due amounts from prior Billing Cycles. Some Fixed Rate Loan Options may have a different due date and are not figured into the Total Minimum Payment Due. At any time you may pay more than the Total Minimum Payment Due, make additional payments or pay in full or in part the Outstanding Balance. You will be required to pay the Minimum Payment Due each month there is an Outstanding Balance on your Account.

You may choose any of the following monthly payment options. Your billing statement will reflect the option you have chosen. You may change your Draw Period payment option at a later time.

B. **Variable Rate Balance Minimum Payment.** Your **"Variable Rate Balance"** is all of your Outstanding Balance that is not part of a Fixed Rate Loan Option. Depending on which payment option you choose for the Draw Period, the Variable Rate Balance Minimum Payment may vary. The Variable Rate Balance Minimum Payment will not be less than the amount of accrued interest and any voluntary insurance, plus any unpaid fees.

1. **Payment Options:**

a. **Interest Only (Plus Insurance) Option** - The Minimum Payment if you elect the Interest Only (Plus Insurance) Option will be the amount of accrued interest plus any voluntary insurance, and unpaid fees.

b. **1.5% of Variable Rate Outstanding Balance Option** - The Minimum Payment if you elect the 1.5% of Variable Rate Outstanding Balance Option will be one and one half percent (1.5%) of the Variable Rate Outstanding Balance plus unpaid fees, or fifty dollars ($50), whichever is greater, or the outstanding Variable Rate Balance if less than the Minimum Payment under this option.

c. **Fixed Payment Option.** The Minimum Payment if you elect this Fixed Payment Option will be at least one and one half percent (1.5%) of the Credit Limit plus any voluntary insurance, Line Protection™ Plan and unpaid fees, or fifty dollars ($50), whichever is greater, or the outstanding Variable Rate Balance if less than the Minimum Payment under this option.

C. **During the Repayment Period.** During the Repayment Period you will be required to make a payment each month. The length of Repayment Period will vary depending on the Outstanding Balance at the beginning of the Repayment Period, if any Property Expenses are incurred during the Repayment Period, and if you have any Fixed Rate Loan Options. The amount of the Total Minimum Payment due may vary due to increases or decreases in the Index or if there are any Fixed Rate Loan Options that remain unpaid at the beginning of the Repayment Period.

Payments during the Repayment Period will be calculated as follows. The Total Minimum Payment Due will be an amount equal to the greater of 1/180th of the Variable Rate Principal Balance remaining on the last date of the Draw Period, plus accrued interest, unpaid fees, unpaid Property Expenses, or fifty dollars ($50). If there are any Fixed Rate Loan Options that remain unpaid at the start of the Repayment Period, the Fixed Rate Loan Options payment previously established will continue to be billed.

For purposes of this Repayment Options section, the Variable Rate Principal Balance equals the amount of your Credit Limit on which you have not elected to convert to a Fixed Rate Loan as of the start of your Repayment Period.

D. **Fixed Rate Loan Option Payment Information.** A Fixed Rate Loan Option has a fixed interest rate and fixed term and is payable monthly. You may convert part or all of the Variable Rate Principal Balance, along with accrued interest, fees, and any voluntary insurance charge to a Fixed Rate Loan Option at any time during the Draw Period or the Repayment Period unless you are in default or if your Advance privileges are suspended or terminated. We will help you establish the amount of principal and interest sufficient to amortize the Fixed Rate Loan Option over the term you select. The maximum term of any Fixed Rate Loan Option may not exceed the repayment period maturity date of this Credit Line. The minimum amount for a Fixed Rate Loan Option is $5,000. You may have up to three (3) Fixed Rate Loan Options open at any one time, but may not have more than four (4) Fixed Rate Loan Options open during any one statement period. The Fixed Rate Loan Option ANNUAL PERCENTAGE RATE is the Prime Rate plus the Fixed Rate Loan Option margin of 8.00%. However, we may make lower Fixed Rate Loan Option rates available from time to time. Please contact your Banking Center or Customer Service for the Fixed Rate Loan Option rate currently offered. Your payment will be a fixed dollar amount to be determined at the opening of the Fixed Rate Loan Option. You may arrange a different payment date for each Fixed Rate Loan Option. Fixed Rate Loan Option payments will be billed separately from your Regular Payment in accordance with the schedule you have arranged. For Fixed Rate Loan Options, you will receive a separate bill. However, the Variable Rate Balance statement will show all activity, including payments.

8. **Receipt of Payments and Payment Application.** All payments made by check, automatic account debit, electronic funds transfer, money order, or other instrument must be received by us at the remittance address on your periodic Billing Statement. Payments received at that address prior to 2:00 PM at the location specified, or a payment made at one of our banking centers in the state or our address indicated as the remittance address by 2:00 PM on any business day will be credited as of the date received. Business days are Monday through Friday, exclusive of legal holidays. If the due date falls on a Saturday, Sunday, or legal holiday, the due date will not be extended. Unless otherwise agreed or required by applicable law, payments and other credits will be applied to **FINANCE CHARGES**, other charges and fees, and principal in any order we choose without notice.

9. **Advances.** During the Draw Period, you may request Advances from your Account, and any amounts you repay will subsequently be available for Advances, subject to the limitations of this Agreement. If there is more than one of you, each of you may obtain Advances in accordance with the terms of this Agreement. Each of you is individually responsible for payment of the entire Account Balance regardless of who actually requested the Advance.

If there is more than one person authorized to use this Credit Line, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

The words **"Authorized Signer"** on Special Convenience Checks and Bank of America ATM cards or Bank of America Check Card or Account Access cards as used in this Agreement means and includes each person who (a) signs the application for the Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for this Credit Line.

You may obtain Advances under your Credit Line Account as follows.

A. **Credit Line Checks.** Writing a preprinted **"Special Convenience Check"** that we will supply to you.

B.   **Telephone Request.** Requesting a credit advance from your Account to be applied to your designated account by telephone upon proper identification and in accordance with procedures established by us. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your Deposit Account Agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request when acting upon such instructions believed to be genuine.

C.   **Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

D.   **Automated Teller Machine ("ATM") Access.** (Not available in CT, ID, NY, WA or TX) Using your "Bank of America ATM card or Bank of America Check Card or Account Access Card" at any of our designated ATM locations to withdraw or transfer funds in excess of the available collected balance in the account.

E.   **Bank of America Equity Maximizer VISA Account Access Card (the "Account Access Card").** (Not available in CT, ID, NY, WA, or TX) Using the Account Access Card as described in this Agreement. Visa is a registered trademark of Visa International Service Association.

F.   **Online Banking.** Transferring funds to a deposit account.

G.   **Limitations on the Use of Checks.** We reserve the right not to honor Special Convenience Checks in the following circumstances:

   1.   **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Special Convenience Check.
   2.   **Post-dated Checks.** Your Special Convenience Check is post-dated. If a post-dated Special Convenience Check is paid and as a result any other check is returned or not paid, we are not responsible.
   3.   **Stolen Checks.** Your Special Convenience Checks have been reported lost or stolen.
   4.   **Unauthorized Signatures.** Your Special Convenience Check is not signed by an "Authorized Signer" as defined below.
   5.   **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Special Convenience Check.
   6.   **Other Special Convenience Check Limitations.** You may not make a payment on the Account with a Special Convenience Check. You notify us that you wish to stop payment of a Special Convenience Check; however, you will not hold us liable if we try to stop payment of Special Convenience Check and we are unable to do so. You may try to stop payment on a Special Convenience Check by notifying Customer Service at the number listed on your statement. Your stop payment order will remain in effect for six (6) months unless renewed.

If we pay any Special Convenience Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Special Convenience Check. The Special Convenience Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Special Convenience Checks along with your periodic Billing Statements; however, your use of each Special Convenience Check will be reflected on your periodic statement as a credit advance. We do not "certify" Special Convenience Checks drawn on your Credit Line.

H.   **Limitations on the Use of ATM Cards.** We reserve the right not to honor the Bank of America ATM card or Bank of America Check Card or Account Access Cards in the following circumstances:

   1.   **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by honoring the Bank of America ATM card or Bank of America Check Card or Account Access Card charge.
   2.   **Stolen ATM Cards.** Your Bank of America ATM card or Bank of America Check Card or Account Access Cards have been reported lost or stolen.
   3.   **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we honored the Credit Line charge.
   4.   **Other ATM Card Limitations.** If we pay any Advance requested by use of the Bank of America ATM card or Bank of America Check Card or Account Access Card under these conditions, you must repay us, subject to applicable laws, for the amount of the Advance. The Advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an Advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the Bank of America ATM card or Bank of America Check Card or Account Access Card will be reflected on your periodic statement as a credit advance.

I.   **Transaction Requirements for Account Access Card.** The following transaction limitations will apply to the use of your Credit Line:

   1.   **Account Access Card Limitations.** The following transaction limitations will apply to your Credit Line and accessing by other methods.
   2.   **Limitations on the Use of Account Access Card.** We reserve the right not to honor the Account Access Card linked to this Credit Line in the following circumstances.
      a.   **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Account Access Card transaction.
      b.   **Stolen Account Access Card.** Your Account Access Card has been reported lost or stolen.
      c.   **Unauthorized Signatures.** Your Account Access Card is not used by a Borrower who has been issued one.
      d.   **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in the Agreement or could be if we paid the Account Access Card transaction.
   3.   **Other Account Access Card Limitations.** If we pay any Advance requested by use of the Account Access Card under these conditions, you must repay us, subject to applicable laws, for the amount of the Advance. The Advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an Advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the Account Access Card will be reflected on your periodic statement as a credit advance.
   4.   **Liability for Unauthorized Account Access Card Transactions.** You are not liable for unauthorized use of your Account Access Card. Notify us promptly if you believe your Account Access Card has been lost or stolen or if you discover any unauthorized transactions. We may require you to provide a written statement regarding claims of unauthorized Account Access Card transactions.
   5.   **Limitations on Lender's Liability.** Lender's liability, if any, for wrongful dishonor of any Advance request is limited to Borrower's actual damages. Lender shall not be liable if any merchant, financial institution or ATM refuses to honor the Account Access Card.

J.   **Lost Special Convenience Checks and Bank of America ATM card or Bank of America Check Card or Account Access Cards.** If you lose your Special Convenience Checks or Bank of America ATM card or Bank of America Check Card or Account Access Card(s) or if someone is using them without your permission you agree to let us know immediately. You can notify us at our address shown at the beginning of this Agreement.

K.   **Future Credit Line Services.** Where permitted by applicable law, your application for this Credit Line also serves as a request to receive any new services (such as access devices), which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

---

BANK OF AMERICA EQUITY MAXIMIZER AGREEMENT AND DISCLOSURE STATEMENT
USHEAG.BOA  09/12/05  005 DOCMAGIC, INC.                                Page 3 of 10                                *DocMagic eForms* 800-649-1362
                                                                                                                        www.docmagic.com

**L. Credit Line Special Convenience Check, Telephone Request, In Person Request and ATM Access Limitations.** There are no transaction limitations for the writing of Special Convenience Checks, requesting an Advance by telephone, requesting an Advance in person, or using the ATM.

**10. Billing Statements.** If you have a balance owing on your Account or have any Account activity, we will send to you a Billing Statement. Billing Statements will show, as applicable, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your previous balance, and/or your new balance. Payments will be due as shown on the Billing Statements.

**11. Automatic Payment.** If you choose to have payments made from a designated account and have arranged with us to do so, we will automatically draft the payment. Drafts will be made on the payment due date or immediately after the payment due date (if the payment due date is on a Saturday, Sunday or legal holiday). If your account does not contain the payment amount due, you understand that it is your obligation without notice from us to make the full payment. Even if you make a manual payment, an automatic payment will be drafted from your designated account, unless you make such manual payment for the full payment due at least three (3) business days prior to the due date; however, if you make less than a full manual payment at least three (3) business days prior to the due date, only the remaining amount currently due will be drafted. To stop an automatic draft, you must contact us at least three (3) business days prior to the scheduled payment draft date. We may accept late payments, partial payments or checks and money orders marked "payment in full" (or similar notations) or payments accompanied by a letter stating that our acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Agreement.

If you have authorized automatic payment above, then the following shall apply:

You hereby authorize the Bank to draft the described account for your loan payments. You agree to the Recurring Automatic Payment Authorization Terms and Conditions that will be enclosed with your Automatic Payment confirmation notice, unless you otherwise notify Lender. If you choose to establish automatic payment to draft your designated Bank of America account, the authorization will remain in full force and effect until the Bank has received written or verbal notification from you of its termination in such time and in such manner as to afford the Bank a reasonable opportunity to act on it. If at any time you select to terminate your automatic payment, your margin will increase by 1/4%.

**12. ANNUAL PERCENTAGE RATE AND FINANCE CHARGE.**

**A. When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for Advances under your Credit Line will begin to accrue on the date Advances are posted to your Credit Line. There is no "free ride" period which will allow you to avoid FINANCE CHARGES on your Credit Line Advances.

**B. How the Balance on which the FINANCE CHARGE is Calculated is Determined.** The cost of the credit through the Credit Line is disclosed as a Finance Charge. Except for some closing costs (indicated in this Agreement), interest will not accrue until a credit advance is made. You will pay interest on each credit advance until it is fully paid off. We will determine the FINANCE CHARGE for each monthly billing period by using the following simple interest rate calculation. A FINANCE CHARGE is calculated daily on the Variable Rate Principal Balance, as defined above in the "Definitions" section of this Agreement, by multiplying the daily periodic rate (as indicated in "How The Rate Used To Calculate The Finance Charge Is Determined ") by the daily Variable Rate Principal Balance.

To get the daily Variable Rate Principal Balance we (i) take the beginning Variable Rate Principal Balance for that day (ii) add to that amount all credit advances and sums advanced by us to fulfill any obligations under a Security Instrument (such as a mortgage, deed of trust, or security agreement), if any, for that day, then (iii) subtract all principal balance payments and credits for the Variable Rate Principal Balance for that day. All of the daily Variable Rate Principal Balance FINANCE CHARGES for the monthly billing cycle are added together to get the total Variable Rate Principal Balance FINANCE CHARGE for the monthly billing cycle. Transaction charges are added to the Variable Rate Principal Balance FINANCE CHARGE to get the total FINANCE CHARGE for the monthly billing cycle. For Fixed Rate Loan Option balances, the estimated FINANCE CHARGE is calculated at the establishment of the Fixed Rate and is included in the fixed payment amount.

**C. How the Rate Used to Calculate the FINANCE CHARGE Is Determined.** The initial Variable Rate Principal Balance daily periodic rate used to compute the Variable Rate Principal Balance FINANCE CHARGE is 1/365th of the initial Variable Rate Principal Balance ANNUAL PERCENTAGE RATE (as indicated under "Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE"). The Variable Rate Principal Balance ANNUAL PERCENTAGE RATE is a variable rate involving both an index and a margin, both described under "Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE" below. FINANCE CHARGES will accrue on an actual 365-day year basis (366 day year basis for leap year). If, however, you participate in a relationship account with a Bank of America Corporation affiliate (as offered from time to time), the Variable Rate Principal Balance Daily Periodic Rate and the Variable Rate Principal ANNUAL PERCENTAGE RATE may be reduced below the rates stated in this Agreement. The addition of a fee may cause the actual Variable Rate Principal Balance ANNUAL PERCENTAGE RATE for the monthly billing cycle to exceed the Variable Rate Principal Balance ANNUAL PERCENTAGE RATE stated in this Agreement.

If the Index is unavailable for any monthly billing cycle, we will use the Index for the most recently preceding monthly billing cycle in which the Index was available. If the Index ceases to be published during the term of this Agreement, we will select a substitute index and margin. The substitute index will be a historical movement substantially similar to the Index, and the substitute index and margin will result in an ANNUAL PERCENTAGE RATE at the time it is substituted that is substantially similar to the rate in effect at the time the Index became unavailable.

There is no limitation on the size of any interest rate adjustment or the number of interest rate adjustments that may be made on the Credit Line so long as the maximum ANNUAL PERCENTAGE RATE is not exceeded. Any increase or decrease in the Index that occurs would cause a corresponding increase or decrease in the Daily Periodic Rate, ANNUAL PERCENTAGE RATE, FINANCE CHARGES and possibly the Total Minimum Payment Due. You understand that adjustments based on an Index change will be applied automatically to the Credit Line and you will not receive advance notice of that adjustment.

The Finance Charge on a Fixed Rate Loan Option is determined on a simple interest basis. If you make a Fixed Rate Loan Option payment(s) before or after any date, either the amount of your originally scheduled final payment may be lower or higher than the amount initially established or additional payment(s) may be required.

Under some circumstances, your payment will not cover the FINANCE CHARGES that accrue and negative amortization will occur. Negative amortization will increase the total amount you may pay us and reduce the equity in the Property.

**13. Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent Index, which is the Prime Rate as published daily in the "Money Rates" table of *The Wall Street Journal* (the "Index"). When a range of rates has been published, the higher of the rates will be used. We will use the most recent Index value available to us as of the date of the ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of the Credit Line Account, we may designate a substitute Index (and, if necessary, a new margin) after notice to you.

**A. Rate Computation.** The ANNUAL PERCENTAGE RATE during the Draw Period is determined using the Index published as of the last business day prior to the first day of the next monthly Billing Statement plus a margin, as shown below, and will be effective on the first day of the next monthly billing cycle.

To determine the Periodic Rate that will apply during your Draw Period we add the margin shown below to the value of the Index and divide the value by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your Draw Period. To determine the Periodic Rate that will apply to your Repayment Period, we add the margin shown below to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL

PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This will result in the **ANNUAL PERCENTAGE RATE** for your Repayment Period. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The current Index is **7.75%** per annum. The margin is **−1.010%** The initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line Account are as stated below:

### Current Rates for the Draw Period

| Range of Balances or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| ALL | −1.010% | 6.740% | 0.01847% |

### Current Rates for the Repayment Period

| Range of Balances or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| ALL | −1.010% | 6.740% | 0.01847% |

**B.   Limits.** The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line Account will increase or decrease as the Index increases or decreases from time to time. There is no limit to the amount by which the **ANNUAL PERCENTAGE RATE** can increase or decrease over a 1-year period. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect monthly. In no event will the corresponding **ANNUAL PERCENTAGE RATE** be more than the lesser of 24.000% or the maximum rate allowed by applicable law.

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**C.   Forgo Rate Increases.** If we forgo an **ANNUAL PERCENTAGE RATE** increase, at the time of a later adjustment we may return to the full Index value plus margin.

**14.   Closing Costs.** In addition to the **FINANCE CHARGES** which will be added to your Credit Line each billing cycle, you will pay the following fees, including real estate closing and security filing fees:

**15.   Other Charges.** You agree to pay the fees and charges listed below if the circumstances triggering their assessment apply. These fees and charges will be added to the Account balance and are payable as set forth in this Agreement.

**A.   Late Charge:** If we do not receive the amount of your minimum monthly payment in full within ten (10) days after your payment due date, you will pay us a late charge equal to the greater of $10.00 or five percent (5%) of the unpaid portion of your minimum monthly payment.

**B.   Returned Payment Charge:** If a check or any other instrument or payment method with which you have made a payment on the Credit Line Account is returned to us unpaid for any reason, you will be charged a return payment charge of $20.

**C.   Returned Special Convenience Check.** $20.

**D.   Annual Fee:** $0.

**E.   Fixed Rate Conversion Fee:** $0.

**F.   Security Instrument Discharge Fee:** As permitted by Applicable Law, Lender may request that at the time you payoff your Credit Line, you pay the Lender's cost to record a discharge of the Security Instrument.

**16.   Refund of Fees, Charges, and Costs.** The terms of this Agreement shall be construed to be consistent with Applicable Law. However, if a court of competent jurisdiction or other qualified authority determines that the loan charges and fees described in this Agreement exceed the limits that Applicable Law allows, the following shall occur. First, any such purportedly excessive charges or fees shall be reduced to the permitted amount. Second, any amounts collected that exceed the permitted amount will be returned to you, either by direct payment or by reducing the principal you owe on your Account. Your receipt of a refund made by direct payment to you or credited to your Account will constitute a waiver of any right of action you may have arising out of overcharges or allegedly excessive loan charges or fees.

**17.   Property Insurance; Other Charges.** You agree to obtain property insurance against loss or damage to the Property, in the amounts, for the time period and against the risks that the Security Instrument and/or we require. You may obtain insurance from an insurance carrier of your choice so long as the insurance carrier is acceptable to us. If you fail to purchase and maintain acceptable property insurance, we may purchase insurance for you or on your behalf and at your expense as

BANK OF AMERICA EQUITY MAXIMIZER AGREEMENT AND DISCLOSURE STATEMENT
USHEAG.BOA  09/12/05  005 DOCMAGIC, INC.                Page 5 of 10                DocMagic eForms 800-649-1362
www.docmagic.com

described in the Security Instrument. We have no obligation to obtain such insurance. Should we take this action, the equity in the Property and contents thereof may not be protected as you desire. Further, the cost of the insurance may significantly exceed the cost of such insurance that you could have obtained; this cost will be treated as an Advance.

**18.   Additional Rights and Remedies.**  In addition to the rights described elsewhere in this Agreement and in the Security Instrument, we also have the following rights:

A.    **Termination and Acceleration.**  We can terminate your Account and require you to pay us the entire outstanding Account Balance under this Agreement in one payment, and charge you certain fees, if any of the following occur:  1) You engage in fraud or make a material misrepresentation at any time in connection with your Account;  2) We do not receive the full amount of any Minimum Payment due or you fail to meet any of the other repayment terms of this Agreement; 3) Your action or inaction adversely affects the Property or our rights in it (for this purpose, the words "you," "your," and "yours" also refer to the owner of the Property, if different than you).  Examples of these actions or inactions include, but are not limited to:  a) Your death, if you are the sole Borrower on the Account; or the death of all but one Borrower which adversely affects our security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) You transfer all or part of your interest in the Property without our written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f) Failure to maintain required insurance on the Property; g) Waste or destructive use of the Property which adversely affects our security; h) Failure to pay taxes or assessments on the Property; i) Permitting the creation of a senior lien on the Property; j) Filing of a judgment against you, if the amount of the judgment and collateral subject to the judgment is such that our security is adversely affected.

We may, at our option, take lesser action than those described in this Section.  Such lesser action may include, without limitation, suspending your Account and not allowing you to obtain any further Advances, reducing your Credit Limit, and/or changing the payment terms on your Account.  If we take any such action, this shall not constitute an election of remedies or a waiver of our right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of this Agreement, the Security Instrument, or at law or in equity.  We may take action under this Section only after complying with any notice or cure provisions required under Applicable Law.  In the event we elect not to terminate the Account or take any lesser action as provided in this Section, we do not forfeit or waive our right to do so at a later time if any of the circumstances described above exists at that time.

B.    **Suspension or Reduction.**  We can refuse to make additional Advances or reduce your Credit Limit during any period of time in which any of the following are in effect:  1) The value of the Property declines significantly below the value as determined by us at the time you applied for your Account.  This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity in the Property is reduced by fifty percent (50%) or more, and may include a smaller decline depending on individual circumstances; 2) We reasonably believe you will not be able to meet the repayment requirements set forth in this Agreement due to a material change in your financial circumstances; 3) You are in default of a material obligation in this Agreement, including, without limitation, your failing to make a Minimum Payment on a date that it is due; 4) Government action prevents us from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement; 5) Government action impairs our security interest such that the value of our interest is less than 120 percent of your Credit Limit then in effect; 6) A regulatory agency which supervises us has notified us that continued Advances would constitute an unsafe and unsound practice; 7) The maximum ANNUAL PERCENTAGE RATE allowed under this Agreement is reached.  If we refuse to make additional Advances or reduce your Credit Limit under this Section, we will send you a written notice stating the reason for such action.  If, for any reason, you believe your ability to obtain Advances or your Credit Limit should be reinstated, you must send us a written request for reinstatement and include in the request the reasons why you believe your ability to obtain Advances or your Credit Limit should be reinstated.

**19.   Collection Costs.**  If you are in default and we require you to pay us immediately in full, we may also require that you pay our collection costs and expenses to the extent not prohibited by law.  If we bring a lawsuit to collect, you will pay our attorneys' fees and court costs allowed by Applicable Law and set by the court.

**20.   Suspension or Termination by You.**  Each of you has the right, upon proper written notice to us, to suspend the privilege of obtaining new Advances.  A request to suspend the privilege of obtaining Advances, even if made only by one of you, will be effective against all of you.  Advances will be reinstated upon our receipt and acceptance of a written reinstatement request signed by each of you, provided that no event(s) permitting a suspension then exist.

To do so, you must notify us in writing.  If one of you requests termination of the Account, the Account will be terminated for all of you.  At our option, we may release some of you from liability under this Agreement and/or under Applicable Law without releasing all of you.

If you cancel your right to Advances under this Agreement, you must notify us and return all Special Convenience Checks and any other access devices.  Any use of Special Convenience Checks or other access devices following suspension or termination may be considered fraud.  You will also remain liable for any further use of the Special Convenience Checks or other Credit Line access devices not returned to us.

**21.   Effect of Suspension of Your Account.**  If your Account is suspended or terminated for any reason, you will nonetheless remain obligated to pay the Account Balance in accordance with the terms of this Agreement.  Upon termination of your Account by either you or us, you must return to us all Checks, Credit Cards, or other Account access devices given to you.  If either you or we terminate your Account, you will not be entitled to a refund of any FINANCE CHARGES, fees, charges, or credit insurance premiums paid or payable under the Account.

**22.   Change in Terms.**  After you open your Account, we may modify or amend the terms of this Agreement and/or the other loan documents pertaining to the Account if any of the following conditions exist:  1) You consent in writing to our proposed modification or amendment at that time; 2) The modification or amendment unequivocally benefits you throughout the remainder of the term of this Agreement; 3) The modification or amendment results only in an insignificant change to the terms of this Agreement and/or the other loan documents; 4) The modification or amendment involves the substitution of a new Index and Margin, as provided in Section 9 above.  Any Account balance on the effective date of any modification or amendment is subject to the modification or amendment

**23.   Prepayment.**  You may prepay all or any amounts owing under this Credit Line at any time without penalty.  However, we will be entitled to receive all accrued FINANCE CHARGES and any other accrued fees or charges.

**24.   Tax Consequences.**  You acknowledge that we (including our employees and representatives) have given you no assurances, representations or warranties that the FINANCE CHARGES and other fees and charges paid on your Account are tax deductible.  You should consult your own tax advisor concerning the deductibility of the FINANCE CHARGES and other fees and charges for the Account.

**25.   Review of Your Account.**  Upon our request, you will provide us with current financial and credit information and will sign any additional or corrective documents in connection with this Agreement or the Account.  You authorize us to release information about you to our affiliates or third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you do not opt out of the applicable policy or as permitted by applicable law.  You also authorize us to obtain credit reports on you at any time, at our sole option, and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition.  We also may from time to time obtain a new valuation of the Property that secures the Credit Line at any time, including internal inspection, at our sole option and expense.

BANK OF AMERICA EQUITY MAXIMIZER AGREEMENT AND DISCLOSURE STATEMENT
USHEAG.BOA  09/12/05  005 DOCMAGIC, INC.                    Page 6 of 10                    DocMagic eForms 800-649-1362
                                                                                            www.docmagic.com

**26.  Use of the Credit Line.**  You may use the Credit Line Account subject to the following limitations:

**A.  Legal Transactions.**  Borrower agrees that Borrower will only use the Credit Line for transactions that are legal where Borrower resides.  For example, Internet gambling transactions may be illegal in Borrower's state.  Display by an on-line merchant of either Lender's logo or a Card Company's logo does not mean that an Internet transaction is legal where Borrower resides.  Lender will not be liable if Borrower engages in an illegal transaction.

**B.  Authorizations.**  Some transactions require lender's prior authorization.  For security purposes, lender may from time to time place or change limits on the number or amounts of transactions Borrower makes in a day at ATMs or point-of-sale terminals.  Such limitations may not be the same at every ATM or point-of-sale terminal.  The limitations placed on a "Bank of America ATM Card" or "Bank of America Check Card" when using an ATM or point-of-sale terminal may not be the same as the limitations placed on an Account Access Card used at the same ATM or point-of-sale terminal.  No such limits are placed on the number or amounts of transactions Borrower makes: at lender's banking centers, by writing a Special Convenience Check, by conducting an Overdraft Protection transaction (subject to the ATM limits, above), or by telephone.  In addition, lender may deny authorization to any method of accessing the Credit Line if the Credit Line has been suspended or terminated or if Lender suspects fraudulent activity, lender shall not be liable for any failure to authorize a transaction for any of these reasons.  However, Borrower is liable for any transaction Lender authorizes even if Lender should not have authorized it because Borrower is or would be in default as a result of the transaction.

**C.  No Security Interest on Purchases.**  This Agreement does not grant Lender a security interest in purchases Borrower charges to the Credit Line.

**D.  Transactions With Merchants** (a) If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", or "all sales final", or similar language, Borrower will be bound by that policy when Borrower uses the Credit Line to buy goods or services from that merchant.  (b) When using the Credit Line to make travel or lodging reservations, Borrower must obtain the merchant's cancellation policy and follow it if Borrower cancels.  If Borrower cancels, Borrower must obtain the cancellation number that the merchant is required to give Borrower.  The merchant may charge Borrower for a cancelled transaction unless Borrower can provide Lender with a correct cancellation number.  If Borrower makes reservations or purchases of any kind, such as lodging reservation for several nights stay or a mail order purchase, the Credit Line may be immediately charged for the full amount of the reservation or purchase, regardless whether Borrower has received the goods or services requested at the time the Credit Line is charged.  (c) If Borrower authorizes a merchant to charge the Credit Line for repeat transactions without the Account Access Card, then Borrower must notify the merchant when Borrower wants to discontinue the repeat transactions or if the Credit Line is closed or if a new Credit Line or Account Access Card number is issued by Lender.  Otherwise, Borrower will be responsible to Lender for the amount of all such repeat transactions.  (d) If Borrower disagrees with a transaction on Borrower's statement or has a dispute with a merchant as a result of a transaction, Borrower will provide Lender with information or assistance Lender reasonably requests.  Otherwise, Borrower will pay Lender for any resulting loss Lender has, unless Lender is prohibited by applicable law from holding Borrower liable for Lender's loss.  (e) If Borrower makes a transaction in a currency other than U.S. dollars, Visa will convert the charge or credit into a U.S. dollar amount.  The conversion rate will be determined using Visa currency conversion procedures that are disclosed to institutions issuing Visa cards.  The conversion rate on the processing date may differ from the rate on the date of Borrower's transaction.  Currently, Visa uses a currency conversion rate of either:  (1) a rate selected by VISA from a range of rates available in the wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives or (2) the government mandated rate in effect for the central processing date.  In each case, Visa uses the rate in effect one day before the conversion date.  In the event Visa chooses to change the currency conversion rate or the day on which the currency conversion rate is determined, then transactions on the Credit Line made in a foreign currency and processed after the change will reflect the change.

**E.  Special Rule for Account Access Card Purchases.**  If Borrower has a problem with the quality of goods or services that Borrower purchased with an Account Access Card, and Borrower has tried in good faith to correct the problem with the merchant, Borrower may not have to pay the remaining amount due on the goods or services.  Borrower has this protection only when the purchase price was more than $50 and the purchase was made in Borrower's home state or within 100 miles of Borrower's mailing address.  (If Lender owns or operates the merchant, or if Lender mailed Borrower the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.).

**F.  Overdraft Protection and Linked Accounts.**  If the Credit Line Account is not blocked, suspended or terminated, you may request that the Credit Line Account be set up to provide overdraft protection for an associated checking or Money Market Savings account.  If the total amount of checks, debit card or ATM transactions or other debits for a business day exceeds the available associated account balance, then an Advance will be made from the Credit Line Account ("Overdraft Protection").  If the Credit Line Account is used for Overdraft Protection, the minimum transfer amount is one hundred dollars ($100) and incremental transfer amounts will be in multiples of one hundred dollars ($100).  However, if there is not $100 available, but the available Credit Line amount can cover the overdraft transaction, then the amount of the available Credit Line will be advanced to cover the overdraft.  For Idaho and Washington, the incremental advance is $25.  If the available credit on your Credit Line will not allow a $25 increment to be advanced, no transfer will be made.  If the associated account is closed or blocked, Overdraft Protection will stop.  If you request that the Credit Line Account be connected to or "linked" to another Bank of America product, you understand and agree that a user on the "linked" account can make a transaction that exceeds the available balance on the "linked" account and cause an Advance to be made.  Also, if an ATM access card is given to a user on the "linked" account, that user when using the ATM access card may access the Credit Line Account and obtain an Advance without making a transaction directly on the "linked" account.  That user may or may not be a party obligated for this Agreement.

**G.  Skip Payment Feature.**  At our discretion, from time to time we may offer a feature that will allow you to skip one or more payments.  FINANCE CHARGES will continue to accrue on the principal balance at the applicable interest rate.  At the end of the skip payment period, the payment terms of this Agreement will be reinstated automatically without further notice.

**27.  Borrowers Protection Plan and Line Protection™ Plan** (Borrowers' Protection Plan and Line Protection™ Plan are registered trademarks of Bank of America Corporation).  Fixed Rate Loan Options may be protected by the Borrowers' Protection Plan, and Variable Rate Balances that are not subject to a Fixed Rate Loan Option may be protected by the Line Protection™ Plan.  Protection options for both plans include Disability, Involuntary Unemployment, and Accidental Death; or Disability and Accidental Death; or Involuntary Unemployment and Accidental Death.  Borrowers' Protection Plan and Line Protection™ Plan are optional and are not required to obtain a Credit Line.  For each new Credit Line, you must specifically request Borrowers' Protection Plan or Line Protection™ Plan.  In addition, you must sign a separate Addendum to your Credit Line Agreement, even if you obtained Borrowers' Protection Plan or Line Protection™ Plan for a prior Credit Line Agreement with Bank of America.  Two Borrowers may purchase Protection for each Fixed Rate Loan Option, but they must select the same protection option, and there may be restrictions on which Borrowers may apply.

Fees for the Borrowers' Protection Plan and Line Protection™ Plan are based on and payable with the regularly scheduled monthly payment of the Credit Line Agreement.  Credit Line Agreements repaid in  quarterly payments are not eligible for the Borrowers' Protection Plan.  Interest is not charged on the fees for Borrowers' Protection Plan or Line Protection™ Plan.

The maximum term of the Borrowers' Protection Plan is the shorter of the Credit Line Agreement term or 120 months.

We may allow you to exceed the Credit Limit temporarily and from time to time, to accommodate the premiums for any voluntary insurance or the fees for Borrowers' Protection Plan or Line Protection™ Plan.

---

BANK OF AMERICA EQUITY MAXIMIZER AGREEMENT AND DISCLOSURE STATEMENT
USHEAG.BOA  09/12/05  005 DOCMAGIC, INC.                    Page 7 of 10                    *DocMagic eForms* 800-649-1362
                                                                                            www.docmagic.com

There are eligibility requirements, conditions and exclusions that can prevent you from receiving benefits under the Borrowers' Protection Plan or Line Protection™ Plan as set forth in the Addendum describing the plan.

28. **Miscellaneous.** If this Agreement represents a renewal, modification, extension, substitution or consolidation of an obligation owed to us, then you acknowledge and agree that there are no claims, setoffs, avoidances, counterclaims or defenses or rights to claims, setoffs, avoidances, counterclaims or defenses to payment or enforcement of the prior obligation. If this Agreement is a renewal of a prior note or agreement with you, then it is the intent of the parties that the note or Agreement evidencing the original extension of credit not be extinguished by the renewal unless required by applicable state law. Our records shall be evidence that this Agreement is a renewal.

You agree that if this Agreement is in default, including the failure to make a Minimum Payment by the due date, you will accept calls regarding the collection of this Agreement at any residence or place of employment. The calls can be automatically dialed and a recorded message may be played. You agree such calls will not be "unsolicited calls" for purposes of any federal, state or local law. To improve customer service and security our calls with you may be recorded. You agree that monitoring or recording may be done and that no additional notice to you or additional approval from you is needed. You authorize us, our parent company, Bank of America Corporation (or any successor company) and Bank of America Corporation's affiliates and subsidiaries ("Affiliates") to: (a) obtain other information deemed necessary concerning your credit experience and other information from credit reporting agencies, creditors, and any department of motor vehicle or similar state agency, your employer (past, present and future) and other persons (and all entities may release and/or verify such information to us at any time without notification to you or without your consent), and (b) share information with our Affiliates, except to the extent that you have opted out of such sharing as provided in our Privacy Policy for consumers.

29. **Entire Understanding.** This Agreement together with the Security Instrument constitutes the entire understanding and agreement between the parties as to the matters set forth in this Agreement and the Security Instrument and supercede all prior understanding and correspondences, written or oral, with respect to the subject hereof.

30. **Delay in Enforcement.** We reserve the right to defer or delay the date certain changes are to occur without notice and without being liable for such delay or deferment. A court decree for divorce or separation or no-court approved mutual agreement does not affect, eliminate or reduce any person's liability for the Agreement or the Account balance if we are not a party to the decree or agreement.

31. **Governing Law.** In addition to applicable federal law, this Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of NEW JERSEY , except for matters related to the exportation of interest (as defined by federal law) which will be governed by and interpreted in accordance with the laws of the State of North Carolina. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction, which is evidenced by the Credit Agreement and this Agreement has been approved, made, and funded, and all necessary loan documents have been accepted by us in the State of North Carolina.

32. **Severability.** If any portion of this Agreement conflicts with, contradicts or otherwise controverts applicable federal, state, tribal, or local law, then to the extent possible such portion shall be construed as being consistent with such Applicable Law, and further will be deemed changed to the extent necessary to accomplish this end. If any such conflicting or contradicting portion of this Agreement cannot be so construed or changed, it will be deemed severed from this Agreement and will not affect other provisions of this Agreement, which shall be given full effect without regard to the conflicting or contradicting portions.

33. **Irregular Payments.** We may accept late payments, partial payments, and items marked "payment in full" even if they are not full payments, without losing any of our rights under this Agreement, and you will remain obligated to pay amounts owed under this Agreement. All written communications concerning disputed amounts including any checks or other instruments that indicate a payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations as full satisfaction of a disputed amount must be mailed or delivered to us at the address shown on your periodic statement.

34. **Waiver of Notice.** Subject to Applicable Law, you waive presentment for payment, demand, protest, and notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of nonpayment.

35. **Sending of Notices.** Except as otherwise provided in this Agreement, all notices must be in writing. Notice to any of you shall be deemed notice to all of you. Any Billing Statement or notice to you under this Agreement will be sufficiently given if sent to your address on file in connection with the Account or to a new address of which you have notified us in writing at least 20 calendar days before the sending of the Billing Statement or notice. Any notice that you give to us must be provided to us at the address listed on page 1, or a different address if you are notified of the same.

36. **Transfer and Assignment.** We may transfer or assign this Credit Line Agreement, the Security Instrument and any other loan document relating to the Account to any person or entity without notice to you. You may not transfer, assign or delegate your duties under this Agreement. Subject to applicable law this Agreement is binding on you, your successors, heirs and personal and legal representatives.

37. **Assumption.** This Account is not assumable. This means that someone buying the Property may not take over this Account as his/her own obligation on the terms of this Agreement or on any other terms.

38. **Caption Headings.** Caption headings are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Acknowledgement.** You understand and agree to the terms and conditions of this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled *When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit* provided to you at application.

WITNESS: ACCEPTED AND AGREED TO:

_____
Borrower  DARYL MARTIN                    Date

_____
Borrower                                  Date

_____
Borrower                                  Date

_____
Borrower                                  Date

_____
Borrower                                  Date

_____
Borrower                                  Date

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
BY:
Scott Ferguson
Assistant Vice President